# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with all Google accounts that, during the time period described below, were accessed from a mobile device located in the geographic regions, more fully described in Attachment A

)
)
)
)
)
)

Case No. 20-882 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18 U.S.C. § 844(i) (maliciously damaging or destroying by means of fire or explosive any building used in interstate commerce)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

ATF Special Agent Rick Hankins_____
Printed Name and Title

Sworn to before me and signed in my presence:

Date: January 24, 2020

_____
Judge's signature

City and State: Milwaukee, Wisconsin_____                Nancy Joseph, U.S. Magistrate Judge____
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under Title 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2.      I am a Special Agent of the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4.      In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin

and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 270 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,300 class hours of fire-related training. Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 200 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

5.     This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

2

6.     I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

7.     As a part of my duties with the ATF, I investigate criminal violations relating to arson and arson-related offenses, including violations of Title 18, United States Code, Section 844. During the course of my investigations, I have regularly used data forensically extracted from cellular devices to obtain evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 844(i) (maliciously damaging or destroying by means of fire or explosive any building used in interstate commerce) has been committed by an Unknown Suspect.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

9.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711.  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." Title 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

10.     Based on my training and experience, I know that cellular devices, such as mobile telephones, are widely-used wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers.    In order to send or receive communications, cellular devices connect to radio antennas that are part of the

3

cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

11.     Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("Wi-Fi") access points if a user enables Wi-Fi connectivity. Wi-Fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the Wi-Fi network. In general, devices with Wi-Fi capability routinely scan their environment to determine what Wi-Fi access points are within range and will display the names of networks within range under the device's Wi-Fi settings.

12.     Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

13.     Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this

4

technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

14.     Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

15.     In addition, based on my training and experience, I know that Google is offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and YouTube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google Maps and YouTube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

16.     In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

5

17.     Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

18.     Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about Wi-Fi access points and Bluetooth beacons within range of the mobile device.

19.     Based on my training and experience, I also know that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

20.     Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and

6

experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google accounts those devices are associated with. Among other things, this information can inculpate or exculpate a Google account holder by showing that s/he was, or was not, near a given location at a time relevant to the criminal investigation.

21.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

22.     Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins

to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

### Fire at 2537-2541 North Martin Luther King Drive, Milwaukee, WI

23.     On December 6, 2019, at approximately 4:31 a.m., the Milwaukee Fire Department (MFD) responded to a fire at 2537-2541 North Martin Luther King ("MLK") Drive in the City of Milwaukee, Wisconsin. The property was a two-story commercial structure that housed two businesses on the first floor: a Metro PCS cellphone store (assigned address of 2537 North MLK Drive); and Hair Fantasys (sic) salon (assigned address of 2541 North MLK Drive).

24.     Investigators from ATF, the Wisconsin Department of Justice, the Milwaukee Police Department (MPD), and MFD subsequently conducted a joint fire scene examination on December 6, 2019, to determine the origin and cause of the fire. Based on witness statements, early photographs, and fire pattern analysis, investigators determined the fire originated inside the Hair Fantasys salon. During excavation inside the salon, investigators located a field stone weighing approximately 18 pounds laying on the floor near remnants of a charred duffle bag or backpack that emitted a strong odor consistent with the presence of gasoline. Additionally, investigators located melted red plastic consistent with a gasoline container melted to the remnants of the backpack or duffle bag.

25.     ATF and MPD subsequently recovered surveillance video from the following locations in relation to the fire that damaged 2537-2541 North Martin on December 6, 2019:

> a) <u>Mobil Gas Station</u> located at 3510 North 7th Street, Milwaukee, WI. The surveillance video was obtained by MPD and inventoried as Item #19043983

Case 2:20-mj-00882-NJ   Filed 03/09/20   Page 9 of 26   Document 1

under Investigation # 193400018. The surveillance video time stamp was found to be approximately 8 minutes slower than real time.

b) <u>Milwaukee Health Services, Inc</u>. located at 2555 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #12. The surveillance video time stamp was found to be approximately 11 hours 58 minutes faster than the official time according to www.time.gov.

c) <u>Clara Mohammad School</u> located at 317 West Wright Street, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #6. The surveillance video time stamp was found to be approximately 1 minute faster than the official time according to www.time.gov.

d) <u>BP Gas Station</u> located at 406 West Center Street, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #19. The surveillance video time stamp was found to be accurate when compared to www.time.gov.

e) <u>All Peoples Church</u> located at 2600 North 2nd Street, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #17. The surveillance video time stamp was found to be approximately 50 minutes faster than the official time according to www.time.gov.

f) <u>Bouchards</u> clothing store located at 2400 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #18. The surveillance video time stamp was found to be approximately 1 hour 24 minutes faster than the official time according to www.time.gov.

g) <u>Northwood Apartments</u> located at 2520 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #13. The surveillance video time stamp was found to be approximately 6 minutes faster than the official time according to www.time.gov.

h) <u>Milwaukee County Office on African American Affairs (OAAA)</u> located at 2578 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #15. The surveillance video time stamp was found to be approximately 10 minutes slower than the official time according to www.time.gov.

i) <u>Milwaukee Police Department Traffic Camera</u> located on the southwest corner of the intersection of North MLK Drive and Center Street. The surveillance video

9

was obtained by MPD and inventoried as Item #20000203 under Investigation # 193400018.  The surveillance video time stamp was found to be accurate.

26.     The following is a summary compilation of relevant images captured by the multiple surveillance systems:

27.     At approximately 3:45 a.m., the Milwaukee Police Department traffic camera mounted on the corner of North Martin Luther King (MLK) Drive and Center Street captured images of a grey or silver four door sedan with a sunroof that traveled southbound on MLK and turned eastbound on Center Street, and then turned southbound on North 2nd Street.

28.     At approximately 3:46 a.m. (adjusted time), camera #5 at Bouchards captured images of a vehicle's headlights that traveled southbound on 2nd Street and appeared to stop near the intersection of Meinecke Avenue.  At approximately 3:48 a.m. (adjusted time), camera #5 captured images of two sets of vehicle headlights that traveled westbound on Meinecke Avenue and then northbound on 2nd Street and stop near the intersection.  At approximately 3:49 a.m. (adjusted time), the same camera captured vehicle headlights on 2nd Street, which illuminated at least one person on foot.  Within seconds, camera #5 captured two sets of vehicle headlights travel northbound on 2nd Street and out of view.  At about that same time, a third vehicle traveled southbound from 2nd Street and turned westbound on Meinecke Avenue and was captured by camera #2 as it drove by the south side of Bouchards.

29.     At approximately 3:49 a.m. (adjusted time), the playground camera at Northwood Apartments captured images of an SUV that traveled northbound on 2nd Street and then turned westbound on Wright Street.  Approximately 10 seconds later, the same camera captured images of a vehicle that also traveled northbound on 2nd Street and westbound on Wright Street.

10

30.     At approximately 3:51 a.m., an MPD traffic camera mounted on the corner of North MLK Drive and Center Street captured images of a grey or silver four door sedan with a sunroof that traveled northbound on MLK Drive and continued north through the intersection.

31.     At approximately 3:57 a.m., an MPD traffic camera mounted on the corner of North MLK Drive and Center Street captured images of a grey or silver four door sedan with a sunroof that traveled southbound on MLK Drive through the intersection.  The vehicle appeared to be similar to the vehicle that was headed northbound about six minutes earlier.

32.     At approximately 3:59 a.m. (adjusted time), Bouchards' camera #4 captured images of a car that traveled southbound on MLK Drive and turned eastbound on Meinecke Avenue.  The images of that car were similar to those of the car that had traveled northbound on MLK Drive from Meinecke Avenue at approximately 3:50 a.m. (adjusted time).  At approximately 3:59 a.m., the car (with the sunroof) turned eastbound on Meinecke Avenue and was followed by a car that had been eastbound on Meinecke Avenue (west of MLK Drive).

33.     The two vehicles were subsequently observed on camera #5 travel eastbound through the 2nd Street intersection and both vehicles appeared to have turned northbound in the alley located between 1st and 2nd Streets.

34.     At approximately 4:00 a.m. (adjusted time), the Playground camera at Northwood Apartments captured images of two sets of vehicle headlights that traveled northbound in the alley between 1st and 2nd Streets from south of Wright and crossed over Wright Street into the alley north of Wright Street.  At approximately 4:01 a.m. (adjusted time), the Playground camera captured images of one vehicle that traveled southbound on 1st Street and turned eastbound on Wright Street.  Investigators examined the surveillance video footage at All Peoples Church located at 2600 North 2nd Street for this time frame and did not observe any vehicle exit the alley

11

between 1st and 2nd Street northbound. However, a vehicle was observed traveling northbound on 1st Street and continued north through the intersection of 1st Street and Clark. Your affiant later examined the alley located between 1st and 2nd Streets and found an open lot area immediately south of 2547 South 1st Street that showed signs of tire tracks from the alley to 1st Street. This open area was the only access point for vehicles to travel between the alley and 1st Street. Therefore, it is reasonable to conclude the two vehicles captured traveling northbound in the alley from Wright Street on the Playground camera subsequently traveled east through the open lot, with one vehicle subsequently turning south on 1st Street while the other turned north.

35. At approximately 4:05 a.m. (adjusted time), Bouchards' camera #5 captured headlights of a vehicle that traveled westbound on Meinecke Avenue and then northbound on 2nd Street.

36. At approximately 4:05 a.m. (adjusted time), the Playground camera at Northwood Apartments captured images of a car that traveled slowly northbound on 2nd Street and crossed over Wright Street and out of frame.

37. At approximately 4:06 a.m. (adjusted time), the surveillance camera at All Peoples Church captured images of vehicle headlights that illuminated the south exterior wall of the church in a manner consistent with a vehicle turning eastbound on Clark Street from northbound 2nd Street. Moments later a vehicle appeared traveling eastbound on Clark Street. The vehicle then turned southbound on 1st Street.

38. At approximately 4:16 a.m. (adjusted time), the Playground camera at Northwood Apartments captured images of at least one person walking southbound on the east side of 2nd Street.

12

39. The Playground camera then captured two individuals walk westbound at approximately 4:17 a.m. (adjusted time) on the north sidewalk of Wright Street. One of the individuals appeared to be carrying a bag with a strap over his/her shoulder.

40. At approximately 4:19 a.m. (adjusted time), camera #2 at Clara Mohammad School captured two subjects walk westbound on Wright Street and cross MLK Drive.

41. The first subject (Subject #1) wore a light colored hooded sweatshirt with colored pants. Subject #1 carried a shoulder strapped bag on his/her right shoulder which he/she readjusted several times throughout the videos. The second subject (Subject #2) wore a dark hooded sweatshirt and dark pants. During the footage captured by camera #2 at the Clara Mohammad School, a light-colored object can be seen under Subject #2's right arm and held close to their body.

42. At approximately 4:20 a.m. (adjusted time), the two subjects walked northbound from Wright Street down the alley running parallel between Vel R. Phillips Avenue and MLK Drive on camera #1 at Clara Mohammad School. Subject #1 continued to hold the shoulder bag on his/her right shoulder while Subject #2 carried the light-colored object in his/her left hand.

43. At approximately 4:21 a.m. (adjusted time), camera #2 at Northwood Apartments captured at least one person walk northbound in the alley behind 2537-2541 North MLK Drive.

44. At approximately 4:22 a.m. (adjusted time), the Clara Mohammad School camera captured Subject #2 walk eastbound near 2537-2541 North MLK Drive while Subject #1 continued to walk northbound down the alley.

45. At approximately 4:23 a.m., camera #D23 at Milwaukee Health Services captured Subject #1 walking north through the alley west of Milwaukee Health Services.

13

46.     At approximately 4:24 a.m. (adjusted time), camera #D21 captured Subject #1 walk north through the alley towards Clark Street. It appeared that Subject #1 was wearing a dark-colored material over his/her face.

47.     At approximately 4:24 a.m. (adjusted time), camera #D27 captured Subject #1 turn eastbound on Clark Street.

48.     Also at approximately 4:24 a.m. (adjusted time), camera #D1 captured Subject #1 walk eastbound on Clark Street and turn southbound MLK Drive.

49.     At approximately 4:25 a.m. (adjusted time), camera #D28 captured Subject #1 walk southbound on MLK Drive and stop approximately 2-3 times while walking southbound in order to look behind him/her.  Camera #D28 also captured Subject #1 stop south of 2537 North MLK Drive and disappear west off camera.

50.     At approximately 4:26 a.m. (adjusted time), the West Side camera at Northwood Apartments captured images of a person who walked southbound on the sidewalk in front of 2537-2541 North MLK Drive and then west (up the stairs) and along the south wall of 2537-2541 North MLK Drive.

51.     At approximately 4:27 a.m. (adjusted time), the West Side camera at Northwood Apartments captured images of two people who walked east along the south wall of 2537-2541 North MLK Drive and then down the stairs and northbound on the sidewalk out of view.

52.     Camera #D28 at Milwaukee Health Services the captured both subjects walk north on the sidewalk and disappear into a doorway until a Milwaukee County Bus passed. Subject #2 subsequently threw an object into 2537-2541 North MLK Drive. Subject #2 then immediately traveled east across MLK Drive. As Subject #2 crossed the street, Subject #1 put his/her shoulder bag on the ground and lit it on fire. Once the bag was burning, Subject #1 threw the bag into 2537-

14

2541 N. MLK Drive. Both subjects continued east through the vacant lot directly east of 2537-2541 North MLK Drive.

53.　At approximately 4:30 a.m. (adjusted time), camera #D24 at Milwaukee Health Services captured both subjects travel on foot north through the alley located between MLK Drive and 2nd Street. Both subjects then turned eastbound through the vacant lot to the south of 2563 North 2nd Street.

54.　At approximately 4:31 a.m. (adjusted time), the surveillance camera at All Peoples Church captured images of vehicle headlights illuminate the east side of 1st Street and move from south to north. Moments later, a vehicle traveled northbound on 1st Street through the Clark Street intersection and disappeared out of frame.

55.　Also at approximately 4:31 a.m. (adjusted time), the Clark Street fishbowl camera at Milwaukee Health Services captured an SUV consistent with the SUV observed at approximately 3:50 a.m. travel eastbound on Clark and then northbound on MLK Drive.

56.　Based on the totality of the information available, this fire was classified as incendiary.

## <u>CONCLUSION</u>

57.　Based on the forgoing, there is probable cause to believe that unknown suspects set incendiary fires, in violation of 18 U.S.C. § 844(i), at 2541 North Martin Luther King Drive, Milwaukee, Wisconsin, on December 6, 2019.

58.　I further submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Locations described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crimes at issue in this case.

15

Among other things, this information can inculpate or exculpate a Google account holder by showing that s/he was, or was not, near a given location at a time relevant to the criminal investigation. The Target Locations and times correspond to the fires described above.

59.     In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

   a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Locations described in Attachment A during the time period described in Attachment A.

   b. The government will then review this list in order to prioritize the devices about which it wishes to obtain associated information.

   c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquiries.

60.     I therefore request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

61.     I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested

records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

62.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, Wi-Fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive location history data.

18

Search Parameters

**Location #A: Area Near the Intersection of North 1st Street and West Clark Street**

Date: 12/06/2019 / Time Period (including time zone): 0405hrs(CST) – 0432hrs(CST)

Target Location: Geographical area identified within the following latitude/longitude coordinates and connected by straight lines:

- Point A1: 43.065702°N, - 87.911237°W
- Point A2: 43.065674°N, - 87.911027°W
- Point A3: 43.065210°N, - 87.911023°W
- Point A4: 43.065192°N, - 87.911225°W



Case 2:20-mj-00882-NJ   Filed 03/09/20   Page 20 of 26   Document 1

Search Parameters

## Location #B: Area Near 2537-2541 North MLK Drive

Date: 12/06/2019 / Time Period (including time zone): 0415hrs(CST) – 0432hrs(CST)

Target Location: Geographical area identified within the following latitude/longitude coordinates and connected by straight lines:

- Point B1: 43.065718°N, - 87.914883°W
- Point B2: 43.065703°N, - 87.914212°W
- Point B3: 43.064710°N, - 87.914208°W
- Point B4: 43.063998°N, - 87.914906°W



20

## Location #C: Area Near the Intersection of West Meinecke Avenue and North 2nd Street

Date: 12/06/2019 / Time Period (including time zone): 0345hrs(CST) – 0351hrs(CST)

Target Location: Geographical area identified within the following latitude/longitude coordinates and connected by straight lines:

- Point C1: 43.062588°N, - 87.912756°W
- Point C2: 43.062572°N, - 87.912520°W
- Point C3: 43.062179°N, - 87.912512°W
- Point C4: 43.062185°N, - 87.912756°W



21

## ATTACHMENT B

### Particular Items to Be Seized

**I.      Information to be disclosed by Google**

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1.      Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2.      For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3.      The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4.      Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

22

## II.    Information to Be Seized

All information described above in Section I that constitutes evidence of a violation of 18 U.S.C. § 844(i) that was committed on or about December 6, 2019, at 2541 North Martin Luther King Drive, in Milwaukee, Wisconsin.

23

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

b.      such records were generated by Google's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

24

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                                Signature